# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: November 12, 2021

| | |
|---|---|
| * * * * * * * * * * * * * | |
| ANDREW SCARLETT and, | |
| TAMARA DAWES, *as the surviving* | Unpublished |
| *parents and/or co-Personal Representatives* | |
| *of the estate of M.J.S.* | |
| | |
| | No. 19-1555V |
| Petitioner, | |
| v. | Special Master Gowen |
| | |
| SECRETARY OF HEALTH | |
| AND HUMAN SERVICES, | Reasonable Basis; Attorneys' |
| | Fees and Costs. |
| Respondent. | |
| * * * * * * * * * * * * * | |

*Joshua A. Whisler*, The Whisler Law Firm, Boca Raton, FL, for petitioner.
*Lynn C. Schlie*, United States Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On April 16, 2021, Andrew Scarlett and Tamara Dawes, as surviving and co-personal representatives of the estate of M.J.S. ("petitioner"), filed an application for final attorneys' fees and costs. Petitioner's Fee Application ("Fee App.") (ECF No. 26). For the reasons discussed below, I **GRANT** petitioner's motion and find that a reasonable final award of attorneys' fees and costs is $14,075.10.

### I.   Procedural History

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this opinion contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims. The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. **This means the opinion will be available to anyone with access to the Internet.** Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.** *Id.*

On October 7, 2019, petitioners, *pro se*, filed a petition pursuant to the National Vaccine Injury Compensation Program.[2]  Petitioners alleged that as a result of M.J.S. receiving the DTaP/DT/Td/Hib, IPV, Rotavirus, PCV and hepatitis B vaccines on May 16, 2018, she suffered respiratory distress and died.  Petition.  The petition was accompanied by medical records, including a vaccination record.  Petitioner's Exhibits ("Pet. Ex.") 1-18.

On October 23, 2019, I held an initial status conference with the parties, *pro se*. Not surprisingly the bereaved parents were convinced of the merits of their claim and had filed a well drafted petition with some supporting medical records.   During the status conference, I explained that considerable challenges exist in proving a SIDS/SUIDS case and that retaining an attorney may help to explore whether or not a narrow basis for recovery may exist. I explained that in a Vaccine Injury claim there will be no cost to them and that the attorney will assist in obtaining medical records and if necessary, an expert to review the claim.  Tr. 12-14.

On December 2, 2019, Mr. Joshua Whisler filed a "Consented Motion to Substitute Attorney," and entered his appearance on behalf of petitioners.  ECF No. 9.  I entered an Initial Order on December 30, 2019, which directed the petitioner to file updated medical records and an updated statement of completion by February 28, 2020.

On March 12, 2020, I held another status conference in this case.  At this status conference, attorney, Mr. Whisler, appeared on behalf of petitioners.  Scheduling Order (ECF No. 16).  During the status conference, I explained that the Federal Circuit's decision in *Boatmon v. Sec'y of Health & Hum. Servs.,* makes it difficult for petitioners to proceed with their vaccine related claim.  I also noted that petitioners' counsel was new to the program and had requested additional medical records.  I further explained that the presence of counsel, especially at the early stages of litigation of these cases, provides a service to the Court, as well as to petitioners.  I noted that reasonable basis may be lost if the case proceeded without a reasonable plan to overcome the significant hurdles established in the *Boatmon* decision.  *Id.* at 2.  I granted petitioners an additional sixty days to file a status report indicating how they wanted to proceed.

On April 6, 2020, petitioner filed a motion for an extension of time to file a status report. Pet. Motion ("Mot.") (ECF No. 17).  I granted petitioner's motion, ordering them to file a status report or a motion for a voluntary dismissal by August 10, 2020.  Order (Non-PDF), April 6, 2020.

On August 10, 2020, petitioner filed a status report stating that petitioners wish to continue to pursue their claim, however, the petitioners and counsel are having "irreconcilable differences" and petitioners' counsel sought to withdraw as counsel.  Pet. Status Report ("Rept.") (ECF No. 20).

On August 11, 2020, I ordered petitioners to have new counsel to enter an appearance on their behalf by September 10, 2020.  Scheduling Order (Non-PDF), Aug. 11, 2020.  On September 10, 2020, petitioner filed a motion for an extension of time to obtain new counsel.

---

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act" or "the Act").  Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

During this time Mr. Whisler remained attorney of record, at my request, in order to facilitate communication between the court and the petitioners until new counsel was obtained.

On September 14, 2020, I granted petitioners' motion to have another attorney enter an appearance or to file a motion for a voluntary dismissal by October 14, 2020. Order (ECF No. 22). On October 14, 2020, Mr. Whisler, on behalf of petitioners filed a motion to voluntarily dismiss their petition. Pet. Mot. (ECF No. 23). I granted petitioners' motion on October 15, 2020 and filed an Order Concluding Proceedings Pursuant to Vaccine Rule 21(a). Order Concluding Proceedings (ECF No. 24).

On April 16, 2021, petitioners' counsel, Mr. Whisler, filed a motion for attorneys' fees and costs. Pet. Fee Mot. (ECF No. 26). Petitioners requested that their attorney be awarded $20,424.00 in attorneys' fees and $1,454.95 in attorneys' costs and $435.75 in costs to petitioners. Pet. Fee Mot. at 2-3.

On April 29, 2021, respondent filed a response to petitioners' attorneys' fees motion, opposing petitioners' motion stating that "petitioners' have failed to establish a reasonable basis for their claim." Resp. Response at 1 (ECF No. 27). Petitioners filed a reply on May 20, 2021, stating that reasonable basis had been maintained because they were complying with the Court's order and petitioners moved to voluntarily dismiss their claim when it became clear that it would be difficult to prevail after a neuro-pathologist reviewed the autopsy slides of the child's brain. Pet. Reply (ECF No. 29).

This matter is now ripe for adjudication.

**II.     Relevant Medical History of M.J.S.**

Proceeding *pro se,* petitioners filed multiple medical records with their petition, including M.J.S. birth certificate, pre-natal records of M.J.S.' mother, limited hospital records for the birth of M.J.S., Neonatal Intensive Care Unit ("NICU") records, the paramedics report transporting M.J.S. to the hospital, hospital records from Plantation General Hospital, and the medical examiner's report. Pet. Exs. 1-17.

The records show that M.J.S. was born prematurely on March 9, 2018 by vaginal delivery. Pet. Ex. 2; Pet. Ex. 7 at 2. M.J.S.' Apgar scores were 9 at 1 minute and 9 at 5 minutes. Pet. Ex. 7 at 2. It was noted that at delivery M.J.S. was "active" and was able to cry spontaneously. *Id.* It was also noted that there was "no respiratory distress." *Id.* However, due to M.J.S.' being born at approximately thirty-two weeks, she was admitted to the NICU. *Id.* While in the NICU, M.J.S received six days of phototherapy and she received her first hepatitis B vaccination on April 2, 2018. *Id.* at 4. M.J.S. was discharged to home from the NICU on April 4, 2018. Her discharge summary noted that her "respiratory" system was "clear and equal and no distress." M.J.S.' neurologic exam stated, "Alert, active and normal tone and reflexes." *Id.* at 5.

On April 11, 2018, M.J.S. had her one-month well-visit with Dr. Mark Rotlewicz. Pet. Ex. 8 at 10. Her weight was noted as 5.12 pounds and height at 17.75 inches. *Id.* It was noted

that there were "No abnormal findings," and then the document provided additional information about colic.  *Id.*

On April 19, 2018, M.J.S. had a sick visit with her pediatrician.  Pet. Ex. 8 at 8.  It was noted that her weight was 5.8 pounds.  *Id.*  She was diagnosed with "constipation, slow transit."  *Id.*

On May 16, 2018, M.J.S. taken to her pediatrician for her two-month well visit.  Pet. Ex. 8 at 5.  Her weight was noted as 8.8 pounds and she was nineteen inches long.  *Id.*  Under "Diagnosis and Treatment Plan," it was noted that there were "no abnormal findings."  *Id.*  On the document titled, "State of Florida: School Entry Health Form," it noted all normal categories for M.J.S., including "chest/lungs/heart" and "eyes/ears/nose/throat."  *Id.* at 2.  The form provided that M.J.S. could participate fully in school activities.  *Id.*  It was at this appointment that M.J.S. received the DTaP, Polio, HIB, second hepatitis B vaccine, and the conjugate pneumococcal vaccine.  *Id.* at 3.

The following day, on May 17, 2018, around 9:20 AM, M.J.S. had just finished breastfeeding and was put down for a nap.  Status Conference Tr. 5.  According to her mother, after M.J.S. was done feeding, she was burped for approximately 15 to 20 mins.  Tr. 5.  Ms. Dawes stated that M.J.S. had fallen asleep and she put her in her bassinet.  *Id.*  Ms. Dawes explained that as soon as she put M.J.S in the bassinet., she cried out and Ms. Dawes picked her up immediately.  Tr. 6.  She tried to suction M.J.S.' nostrils to remove mucus, but only a little came out.  Tr. 6.  Ms. Dawes stated that M.J.S. began to turn blue and she dialed 911 while taking her clothes off.  Tr. 7.  Ms. Dawes stated that she began to do compressions and on the third compression, blood began to come out of M.J.S. nose and mouth.  *Id.*

In the EMS report, it states that, "Mother relates [patient] began to bleed from mouth and nose and she summoned EMS."  Pet. Ex. 12 at 6.  The report explained that when EMS arrived, M.J.S. was laying on her back on a counter with her mother performing CPR.  *Id.*  It also stated that M.J.S. had blood coming from her mouth and nose and had abdominal distension in all quadrants.  *Id.*  M.J.S. was transported to the Plantation General Hospital.  *Id.* at 7.  The EMTs were able to get a pulse after giving M.J.S. a second dose of epinephrine.  Pet. Ex. 16 at 5.

In the emergency room, M.J.S. was intubated and spontaneous circulation returned after the fifth dose of epinephrine.  Pet. Ex. 16 at 18.  She was admitted to the Pediatric Intensive Care Unit ("PICU") with respiratory support.  *Id.*  M.J.S. had no brain function and was pronounced brain dead on May 19, 2018.  Pet. Ex. 16 at 19. The family was initially reluctant to remove life support but after 48 hours life support was removed on May 21, 2018.  *Id.*

An autopsy was performed on May 22, 2018.  The report indicated that the cause of death was "undetermined," and the manner of death was "undetermined."  Pet. Ex. 18 at 2.  There was no evidence of physical injury.  *Id.* at 6.  The medical examiner opined that M.J.S. died as a result of "undetermined causes."  *Id.*

### III.    Parties' Arguments

Respondent argued that petitioners failed to establish a reasonable basis for their petition and therefore should not receive an award of attorneys' fees and costs. Resp. Response at 1. Respondent argues that the petitioners' claim relied on "nothing more than unsupported speculation that their daughter's death was a result of the vaccines she received." *Id.* at 8. Respondent also argues that both the Court and respondent's counsel made petitioners' counsel aware of the current state of the law with respect to SIDS/SUIDS claims in the Vaccine program. *Id.* Respondent stated that a concern for reasonable basis was raised with petitioners' counsel on March 23, 2020, but counsel "opted to continue to represent petitioners and proceed with their claim, and in doing so incurred the risk that they would not be compensated for their efforts." *Id.*

Petitioners argue that reasonable basis existed throughout the pendency of the claim. Pet. Reply at 3-4. Further, petitioners argue that counsel proceeded "in accordance with the Court's instruction, obtained autopsy slides and hired an expert in Pathology and Neurology to examine the findings to determine if a brainstem abnormality was present." *Id.* at 3. Arguably, under *Boatmon*, a narrow basis for recovery could exist if an abnormality in the arcuate nucleus of the brain stem could be established by pathological examination. Additionally, petitioners argue that between August 10, 2020 and the date that the Notice of Voluntary Dismissal was filed, counsel had informed petitioners that he would be moving to withdraw as counsel if petitioners wished to continue their claim. *Id.* at 3. Ultimately, the petition was dismissed without prejudice.

### IV. Legal Standard

#### A. Good Faith

Petitioners are entitled to a presumption of good faith as is the government. *Grice v. Sec'y of Health & Human Servs.,* 36 Fed. Cl. 114, 121 (1996). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice,* 36 Fed. Cl. at 121. Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993WL 496981, at *1); *Turner v. Sec'y of Health & Human Servs.*, 2007 WL 4410030, at *5. The good faith requirement has been described as "a subjective standard that focuses upon whether petitioner honestly believe he had a legitimate claim for compensation." *Turner,* 2007 WL 4410030, at *5. Black's Law Dictionary explains that bad faith involves conduct indicating "dishonesty or belief, purpose, or motive." Black's Law Dictionary (11th ed. 2019). There is no doubt in my mind that petitioners maintained a good faith belief that the vaccines played a substantial role in their baby's demise.

#### B. Reasonable Basis

"Good faith" and "reasonable basis" are two distinct requirements. *Cottingham v. Sec'y of Health & Human Servs.,* 971 F.3d 1337, 1344 (Fed. Cir. 2020); *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017); *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014)). "Good faith is a subjective test, satisfied through subjective evidence." *Cottingham*, 971 F.3d at 1344. Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical

5

records or medical opinion. *Sharp-Roundtree v.Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Human Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Human Servs.*, No.99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding of reasonable basis when petitioner presented only e-mails between her and her attorney).

The Federal Circuit has subsequently held that "failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion." *Cottingham*, 971 F.3d at 1345. While the Court in *Cottingham* did not purport to identify all forms of objective evidence, it stated that "objective medical evidence, including medical records… even where the records provide only circumstantial evidence of causation" can support a showing of reasonable basis. *Id.* at 1346 (citing *Harding v. Sec'y of Health & Human Servs.*, 146 Fed. Cl. 381, 403 (Fed. Cl. 2019)). The Court also held that the special master should consider as objective evidence a vaccine package insert, specifically a section titled "Adverse Reactions" which listed several injuries that were also listed in the petitioner's medical records. *Id.* The *Cottingham* Court also reiterated that the reasonable basis determination is still based on a "totality of the circumstances."

In another recent opinion regarding reasonable basis, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. *James-Cornelius v. Sec'y of Health & Human Servs.,* 984 F.3d 1374, 1379-81 (Fed. Cir. 2021). The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." *Id.* at 1379 (citing *Cottingham,* 971 F.3d at 1346). When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation. *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Additionally, there may be reasonable basis at the time that a claim is filed, which then dissipates as the claim proceeds. *R.K. v. Sec'y of Health & Human Servs.*, 760 Fed. Appx. 1010, 1012 (Fed. Cir. March 15, 2019) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376-77 (Fed. Cir. 1994) for the holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis"). "Petitioners'

6

counsel have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham*, 134 Fed. Cl. 567, 574 (2017) (citing *Perreira*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Human Servs.*, 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 724, 727 (2016)).

## V. Discussion

### A. Good Faith

In this case, petitioners filed their case *pro se*. Given the temporal relationship between the vaccines M.J.S. received and her death, petitioners had an honest belief that they had a claim for compensation. Further, respondent did not contest that petitioners lacked good faith. As such, I find that petitioners had good faith when they filed the claim and maintained that good faith until the petition was dismissed.

### B. Reasonable Basis

As noted above, petitioners initially filed their petition *pro se*, and at the recommendation of the Court that they seek representation by counsel to advise them, obtained attorney Mr. Joshua Whisler. When petitioners initially filed their petition, they also filed relevant medical records related to the birth of M.J.S., her care in the NICU, pediatrician office visits, the EMS report, hospital records, and the autopsy report.

The records indicate that prior to M.J.S. receiving the panel of vaccinations, she was gaining weight and had no abnormal findings at both her one-month and two-month well visits. One day after receiving multiple vaccines, M.J.S. went into acute respiratory and cardiac arrest. Although a pulse was established in the emergency room she was declared to be brain dead on May 19, 2018 and ultimately, she passed away on May 21, 2018 when life support was removed.

When attorney, Mr. Whisler, appeared in the case, he was advised by the Court and respondent's counsel that the existing law regarding SIDS/SUIDS cases makes it difficult to demonstrate vaccine causation and that, at a minimum, counsel would have to have the autopsy slides reviewed by a neuro-pathologist to determine if a brain stem abnormality could have created a unique vulnerability under the Triple Risk theory for SIDS. After becoming aware of the challenges in moving forward in this case, counsel obtained the autopsy slides and had them reviewed by a neuro-pathologist. After this review, petitioners' counsel appears to have advised his clients of the difficulty in proceeding and ultimately, that advice resulted in the claim being dismissed. While petitioners were initially reluctant to accept that advice they ultimately did and Mr. Whisler remained in the case, at my request to facilitate communications with and filings by the petitioners. Thus, petitioners' counsel performed his obligation to dismiss the claim once he was made aware that the claim could not be proven. *See Cottingham*, 134 Fed. Cl. 567, 574 (2017) (citing *Perreira*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Human Servs.*, 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 724, 727 (2016)).

While the objective evidence filed in this case does not demonstrate that petitioners would have prevailed on their claim based on the holding in *Boatmon*, that is not the standard for

determining if reasonable basis existed. Instead, the objective evidence established that a relatively healthy child suffered cardiac arrest the day after receipt of five vaccines and died five days post vaccination without regaining brain function. The sequence of events created a plausible, if not likely successful, cause of action in the minds of the bereaved parents. The undersigned explained during a status conference, that, at best, the petitioners could have a narrow basis to distinguish *Boatmon*, if a defect in the child's brain stem could be established by pathological examination that would have created a particular vulnerability to an exogenous stressor under the Triple Risk Theory. Counsel did obtain the autopsy slides and have them evaluated by a neuro-pathologist. Although the pathologist did not render a report, it appears from the sequence of events that he was not able to identify such a specific defect in the brain of the deceased child.

Petitioners, with the advice of counsel, ultimately did not move forward to offer a theory of causation, but instead recognized the *current* limits of the relevant law and dismissed the case. Finally, petitioners' counsel provided a service to the *pro se* petitioners and to the Court, by analyzing and explaining to his clients, as their advocate, complicated legal and scientific issues which would adversely impact their likelihood of success in this court. He then advised them to take appropriate action such that additional resources of the Court and the respondent would not be used. As such, petitioners, based on the sequence of events established by the filed medical records detailing the otherwise unexplained demise of their child, established reasonable basis and maintained it through the dismissal of the claim. Had counsel continued to pursue the claim after receiving the advice of the pathologist and analyzing the holding in *Boatmon*, reasonable basis likely would have been lost. Counsel did not, and instead, provided appropriate advice to his clients. While the clients were initially reluctant to accept that advice, they ultimately did and counsel, on their behalf filed for a voluntary dismissal, which I granted. The early dismissal of the claim was granted without involving further litigation of the merits of the claim.

## VI. Attorneys' Fees and Costs

### a. Legal Standard

The Vaccine Act permits an award of reasonable attorneys' fees and costs. §15(e). Section 300aa-15(e)(1) of the Vaccine Act provides that, "[i]f the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."

As this case was voluntarily dismissed, petitioner's counsel is still eligible for reasonable attorneys' fees and costs. As discussed above, I find that the petition was brought in good faith with a reasonable basis.

Petitioners "[bea[r] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson v. Sec'y of Health & Human Servs.,* 24 Cl. Ct. 482, 484 (1993). Counsel must submit fee requests that include contemporaneous and specific

billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs.,* 85 Fed. CL. 313, 316-18 (2008). Adequate proof of the claimed fees and costs should be presented when the motion is filed. *Id.* at 484 n.1. The special master has the discretion to reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Human Servs.,* 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.,* 85 Fed. Cl. 313 (Fed. Cl. 2008), *aff'd* No. 99-537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

### b. Attorneys' Fees

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera,* 515 F. 3d at 1348 (quoting *Blum,* 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriquez v. Sec'y of Health & Hum. Servs.,* 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F.3d at 1349).

Further, the Office of Special Masters has adopted the framework developed in *McCulloch* for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.,* No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Under *McCulloch,* the following factors are "to be considered in determining an appropriate billing rate: the prevailing rate for comparable legal work in the forum of Washington, D.C.; the prevailing rate for cases in the Vaccine Program; the experience of the attorneys in the Vaccine Program; the overall legal experience of the attorneys in the case; and the quality of work performed in vaccine cases." *McCulloch,* 2015 WL 5634323, at *60-61.

Under *McCulloch,* an attorney with 5-7 years of experience in practice is eligible for rates of $243.00 -$324.00 per hour in 2019 and for an attorney with 8-10 years of experience in practice is eligible for rates of $309.00-$394.00 in 2020.

Petitioners' requests reimbursement for attorneys' fees in the total amount of $20,424.00 for work performed by attorneys Mr. Joshua Whisler and Mr. Daniel Cohan. Pet. Fees Mot. at 3. Specifically, petitioners request that Mr. Whisler be reimbursed at an hourly rate of $378.00 per hour for work performed in 2019 and $394.00 per hour for work performed in 2020 and that Mr. Daniel Cohan be reimbursed at an hourly rate of $448.00 per hour for work performed in 2019 and $467.00 per hour for work performed in 2020. Further, petitioners request that a paralegal be reimbursed at a rate of $200.00 per hour for work performed during the same time-period.

Mr. Whisler graduated from law school in 2012 and became a member of the Florida Bar in 2012. Thus, Mr. Whisler is eligible for rates associated with an attorney with 5-7 years of experience in practice for his work performed in 2019 and 8-10 years of experience in practice for his work performed on this case for 2020 and 2021. While Mr. Whisler is eligible for forum rates in 2019 and 2020, the requested rates by Mr. Whisler will be reduced. This was Mr. Whisler's first case in the Vaccine Program and the rate he requested for 2019 exceed the forum

rates established by OSM.  Additionally, he required guidance from the undersigned during status conferences to recognize and understand the challenges presented to his case by the *Boatmon* decision.   As such, I find that the lower end of the *McCulloch* fees range is an appropriate hourly rate for work performed by Mr. Whisler in 2019 and 2020.  Thus, Mr. Whisler is entitled to an hourly rate of $243.00 for work performed in 2019 and $309.00 for work performed in 2020.

Mr. Cohan graduated from law school in 1988 and became a member of the Florida Bar in 2017.  Pet. Fee App. Ex. B.  Having considered the overall circumstances of this case, including that this was counsel's first case in the Vaccine program and that he eventually became admitted to the Court of Federal Claims Bar, I will award some fees for the work performed by Mr. Cohan.  Thus, Mr. Cohan will be compensated at the applicable rate for an attorney with 4-7 years of experience, given that he has only been barred in Florida since 2017, that he did not supply any additional evidence that he had been practicing law since graduating from law school in 1988, and that this was his first case in the Vaccine program.  Further, based on the billing record, it does not appear that Mr. Cohan performed any work in this case in 2019 and, as such, will be awarded a fee of $253.00 per hour for work performed in 2020.

Finally, the requested paralegal rate of $200.00 per hour exceeds the rate fee schedule for both years and as such, will be reduced to $135.00 per hour for work performed in 2019 and $141.00 per hour for work performed in 2020.

### c. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera,* 515 F.3d at 1348.  Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [his] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.,* 3 F.3d 1517, 1522 (Fed. Cir. 1993).  In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged.  *See Broekelschen v. Sec'y of Health & Hum. Servs.,* 102 Fed. Cl. 719, 728-29 (2011) (affirming the special masters' reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.,* 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours).

Petitioner's counsel has provided a breakdown of hours billed.  Pet. Fees App. Ex. C at 15-31.  Based on the "Attorneys' Costs and Fee Details," provided by petitioners' counsel, it appears that Mr. Whisler only performed a total of 4 hours of work on this case between 2019-2020 and Mr. Cohan performed a total of 13.6 hours of work in this case in 2020.  Thus, it appears that most of the work was performed by a paralegal totaling 60 hours (3 hours in 2019 and 57 in 2020).  The tasks the attorneys, Mr. Whisler and Mr. Cohan billed for are consistent with tasks necessary when pursuing a claim in the Vaccine Program and are not excessive.

As noted above, the rates for the attorneys and paralegal will be reduced.  Therefore, petitioners are awarded $12,621.11.

### d. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). In this case, petitioner is requesting a total of $1,454.95 in attorneys' costs.

Specifically, petitioners request $1,200 for Dr. Gultekin's expert fees. Pet. Fees Mot. at 7. Dr. Gultekin, an Anatomic Pathologist & Neuropathologist, billed at an hourly rate of $600.00 per hour and spent two hours reviewing the pathology slides and medical records. Dr. Gultekin did not provide a written report, but based on the sequence of events, his opinion did not appear to document a potential avenue for arguing that *Boatmon* should not apply in this case based upon an underlying vulnerability in the brain stem of the child. It appears that his advice was helpful to petitioners' counsel in coming to a decision that he could not distinguish *Boatmon* on the facts of the present case. While Dr. Gultekin's hourly rate of $600.00 per hour exceeds what is typically paid to experts that provide reports and testify in cases before this Court, he spent a limited amount of time on this case, and as such, will be awarded in full.

Petitioners also seek reimbursement for obtaining medical records, specifically the slides from the autopsy of M.J.S.' brain and postage services. The review of these slides was necessary to ruling in or out a potential theory of causation in the case and are typical in the course of litigation for Vaccine cases, and as such, shall be awarded.

Finally, petitioners seek reimbursement of the filing fee and postage for mailing the petition and fees to the court, totaling $435.75. Pet. Fees App. Ex. D. These costs shall be reimbursed to the petitioners.

As such, petitioners' attorneys' costs and petitioners' costs will be paid in full.

### VII. Conclusion

In conclusion with the foregoing, petitioners' motion for attorneys' fees and costs is **GRANTED.** I find that petitioner is entitled to a reimbursement of attorneys' fees and costs as follows:

| | |
|---|---:|
| Attorneys' Fees Requested | $20,424.00 |
| (Reduction of Fees) | - ($7,802.90) |
| **Total Attorneys' Fees Awarded** | **$12,621.10** |
| | |
| Attorneys' Costs Requested | $1,454.95 |
| (Reduction of Costs) | ---- |
| **Total Attorneys' Costs Awarded** | **$1,454.95** |
| | |
| **Total Attorneys' Fees and Costs** | **$14,075.10** |

11

**Accordingly, I award a lump sum in the amount of $14,075.10, representing reimbursement for petitioners' attorneys' fees and costs, in the form of a check payable to petitioners' and their attorney, Mr. Joshua Whisler.**

**Additionally, I award $435.75, representing reimbursement to petitioners for costs, in the form of a check payable to Ms. Tamara Dawes.**

**IT IS SO ORDERED.**

<u>**s/Thomas L. Gowen**</u>
Thomas L. Gowen
Special Master